# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| COLIN BROWN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO. _____ |
| PUNCH BOWL ARLINGTON, LLC; ) | |
| ) | COMPLAINT |
| Serve: ) | |
| National Registered Agents, Inc. ) | JURY TRIAL DEMAND |
| 4701 Cox Road ) | |
| Suite 285 ) | |
| Glen Allen, VA 23060 ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **COMPLAINT**

Plaintiff Colin Brown, by counsel, and for his Complaint against Defendant Punch Bowl Arlington, LLC, states as follows:

1. This action brings federal claims of discrimination and retaliation based on disability under the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.* ("ADA"). Plaintiff brings these claims because Defendant discriminated and created a hostile work environment against him due to his disability and retaliated against him for engaging in protected activity. Plaintiff was ultimately terminated from his employment as a result of Defendant's actions.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is a civil action arising under a federal statute.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events described in this action took place within this judicial district.

## PARTIES AND RELEVANT NON-PARTIES

4. Plaintiff Colin Brown ("Plaintiff" or "Mr. Brown") is a resident and citizen of Arlington, Virginia.

5. Mr. Brown was born with cerebral palsy, a condition that disrupts normal development and from which Mr. Brown continues to suffer symptoms.

6. Mr. Brown's cerebral palsy substantially limits his ability to perform major life activities. They symptoms of Mr. Brown's cerebral palsy affect his balance, coordination, and movement, rendering everyday activities such as walking and changing the position of his body more difficult. The speed at which Mr. Brown completes tasks that require meaningful physical movement is limited by his cerebral palsy.

7. Mr. Brown is a member of a protected class based on his disability.

8. Defendant Punch Bowl Arlington, LLC ("Punch Bowl") is a foreign corporation registered to do business in Virginia.

9. On December 21, 2020, Punch Bowl's parent company, PBS Brand Co., LLC filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. *In re: PBS Brand Co., LLC*, Ch. 11 Case No. 20-13157-JTD (Bankr. D. Del.).

10. On March 12, 2021, PBS Brand Co., LLC and Mr. Brown stipulated to the release of his claim from the automatic stay pursuant to certain conditions. *See* Exhibit A.

11. Brian Dunbar ("Dunbar") was, at all relevant times, the Executive Chef at Punch Bowl and one of Mr. Brown's supervisors.

## FACTS

12. In December 2018, Kat, a chef at Punch Bowl, interviewed Mr. Brown for a dishwasher position at Punch Bowl.[1]

13. During his interview, he informed Punch Bowl, through Kat, about his diagnosis of cerebral palsy.

14. Punch Bowl did not inform Mr. Brown of any concerns it had about his potential productivity as a result of his cerebral palsy.

15. Punch Bowl specifically sought someone for the position who could be available to work late hours and close. Mr. Brown's availability met Punch Bowl's criteria.

16. Punch Bowl hired him as a dishwasher at a rate of $9.00 per hour to begin in mid-December 2018.

17. In addition to his responsibilities as a dishwasher, Mr. Brown also assisted with food preparation and trash disposal.

18. Punch Bowl paid other dishwashers more than Mr. Brown, a fact that Mr. Brown discovered from Ernesto, the individual who created employee schedules.[2]

---

[1] Mr. Brown is not aware of the last name of the individual to whom he refers as "Kat" throughout his Complaint.
[2] Mr. Brown is not aware of the last name of the individual to whom he refers as "Ernesto" throughout his Complaint.

19. Other dishwashers hired at or around the same time as Mr. Brown were making as much as $13.00 per hour.

20. Punch Bowl never provided an explanation to Mr. Brown regarding why it paid him less than other dishwashers, particularly given the additional work Mr. Brown performed.

21. On Mr. Brown's first day of work, Dunbar began a campaign of harassment against Mr. Brown by yelling at him to work faster.

22. Mr. Brown was physically incapable of working faster due to his cerebral palsy. His disability is clearly visible, and Dunbar was aware that Mr. Brown's work speed was limited by his cerebral palsy.

23. Dunbar yelled at Mr. Brown on an almost-daily basis about Mr. Brown's work speed.

24. Several days into this treatment, Mr. Brown reminded Dunbar about his disability and told Dunbar that he was giving 100 percent of his effort to his work.

25. Despite this reminder, Dunbar continued yelling at Mr. Brown to work faster nearly every day.

26. In addition to yelling, Mr. Dunbar stood next to Mr. Brown at the dishwashing statement, wash several dishes side-by-side with him, and tell anyone else in the room how slow Mr. Brown was.

27. Dunbar was so aggressive toward Mr. Brown that Mr. Brown was afraid to respond.

28. Dunbar's behavior toward Mr. Brown was well-known at Punch Bowl, as he made no attempt to hide it. At least one cook, server, and other manager were direct witnesses to his treatment of Mr. Brown.

29. Dunbar was the only individual that criticized Mr. Brown's work. Mr. Brown received praise from his coworkers and other managers about his work.

30. Mr. Brown reported Dunbar's behavior to Dagmarr, General Manager of Punch Bowl, toward the end of December 2018. [3]

31. Dagmarr told Mr. Brown she did not want to discuss the issue with him.

32. On information and belief, Dagmarr told Dunbar about Mr. Brown's complaints.

33. On information and belief, Punch Bowl took no other action to correct Dunbar's behavior.

34. Dunbar's harassment of Mr. Brown did not cease.

35. On the contrary, Dunbar became more critical of Mr. Brown and his discriminatory treatment of Mr. Brown worsened.

36. On or about January 14, 2019, Dunbar mocked Mr. Brown's movement. The manner in which Mr. Brown moves is a direct result of Mr. Brown's disability.

37. Dunbar said to Mr. Brown, "this is how you wash dishes" and mimicked Mr. Brown's movements.

38. Dunbar then told Mr. Brown that Mr. Brown was a liability.

39. Later that evening, Punch Bowl terminated Mr. Brown's employment.

40. Mr. Brown learned of his termination from Ernesto, who told Mr. Brown he had no concerns about Mr. Brown's performance and that he would be happy to provide Mr. Brown with a reference.

---

[3] Mr. Brown is not aware of the last name of the individual to whom he refers as "Dagmarr" throughout his Complaint.

41. Punch Bowl did not provide Mr. Brown with a reason for his termination on January 14, 2019.

42. On information and belief, Dunbar requested Mr. Brown's termination.

43. On information and belief, Dunbar requested Mr. Brown's termination because of his disability and because Mr. Brown had complained about Dunbar's discriminatory treatment.

### Exhaustion of Administrative Remedies

44. On August 23, 2019, Mr. Brown timely filed a charge of discrimination against Defendant based on disability discrimination, hostile work environment, and retaliation with the United States Equal Opportunity Commission ("EEOC").

45. The EEOC issued Mr. Brown a Notice of Right to Sue in this matter against Defendant on November 17, 2020.

46. Plaintiff has exhausted his administrative remedies as required by 42 U.S.C. § 2000e, et seq.

47. Defendant's inclusion in PBS Brand Co., LLC's chapter 11 bankruptcy filing prohibited Mr. Brown from filing his complaint as a result of the automatic stay.

48. On March 12, 2021, PBS Brand Co., LLC and Mr. Brown stipulated to the release of Mr. Brown's claims from the automatic stay. See Exhibit A.

49. Mr. Brown has filed this complaint within 30 days of the release of his claims from the automatic stay, thereby making his claims timely filed pursuant to 11 USC § 108(c).

### COUNT I
### DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
### 42 U.S.C. § 12101

50. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

51. Mr. Brown is a member of a protected class based on his disability.

52. Defendant became aware of Mr. Brown's disability during his interview.

53. Following his interview, Defendant offered Mr. Brown a salary that was as much as $4.00 lower than other, similarly-situated dishwashers with no explanation for the disparity.

54. Dunbar yelled at Mr. Brown for not working fast enough starting on his first day of work and continuing throughout his employment.

55. Mr. Brown reminded Dunbar of his disability in December 2018 after Dunbar yelled at him.

56. Dunbar's discriminatory treatment was well-known and had multiple witnesses, including managerial witnesses.

57. Despite that notice, Punch Bowl failed to correct Dunbar's behavior.

58. When Mr. Brown attempted to lodge a formal complaint in December 2018 with Dagmarr, he was rebuffed.

59. On information and belief, Punch Bowl did not take any corrective action.

60. Instead, Dunbar's behavior became even worse, and Dunbar mocked Mr. Brown's physical movements in Mr. Brown's presence and referred to him as a liability because of his disability.

61. Ultimately, Punch Bowl terminated Mr. Brown's employment because of his disability.

62. As a direct and proximate result of the willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered emotional and mental distress, anguish, and

indignation. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

63. As a direct and proximate result of the acts and conduct of Punch Bowl as alleged herein, Plaintiff has suffered loss of earnings and related employment benefits in an amount to be proven at trial.

## COUNT II
## HOSTILE WORK ENVIRONMENT BASED ON DISABILITY
## 42 U.S.C. § 12101

64. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

65. Mr. Brown is a member of a protected class based on his disability.

66. Defendant became aware of Mr. Brown's disability during his interview.

67. On an almost-daily basis throughout Mr. Brown's employment, Dunbar yelled at Mr. Brown for not working fast enough, starting on his first day of work.

68. Mr. Brown reminded Dunbar of his disability in December 2018 after Dunbar yelled at him.

69. Despite this reminder, Dunbar continued yelling at Mr. Brown, and was so aggressive that Mr. Brown was afraid to speak up for himself.

70. Dunbar's discriminatory treatment was well-known and had multiple witnesses, including managerial witnesses.

71. Despite that notice, Punch Bowl failed to correct Dunbar's behavior.

72. When Mr. Brown attempted to lodge a formal complaint in December 2018 with Dagmarr, he was rebuffed.

73. On information and belief, Punch Bowl did not take any corrective action.

74. Instead, Dunbar's behavior became even worse, and Dunbar mocked Mr. Brown's physical movements in Mr. Brown's presence and referred to him as a liability because of his disability.

75. Ultimately, Punch Bowl terminated Mr. Brown's employment because of his disability.

76. Punch Bowl's treatment of Mr. Brown was severe and pervasive and constitutes a hostile work environment.

77. As a direct and proximate result of the willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered emotional and mental distress, anguish, and indignation. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

78. As a direct and proximate result of the acts and conduct of Punch Bowl as alleged herein, Plaintiff has suffered loss of earnings and related employment benefits in an amount to be proven at trial.

## COUNT III
## RETALIATION
## 42 U.S.C. § 12203

79. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

80. The ADA prohibits retaliation against an employee who, in good faith, opposes disability discrimination.

81. Mr. Brown engaged in protected activity when he complained to Dunbar and Dagmarr about the discrimination to which he was subjected at Punch Bowl.

82. Punch Bowl knowingly and purposefully terminated Plaintiff on the basis of his disability and in retaliation for his complaint of disability-based discrimination.

83. These actions are retaliation prohibited by the anti-retaliation provisions of the ADA.

84. Defendant's conduct was actuated by malice, spite, and ill will; was willful and wanton, and evinced conscious disregard for the rights of Mr. Brown.

85. As a direct and proximate result of Defendant's actions, Mr. Brown has suffered and continues to suffer severe emotional distress. Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, anxiety, distress, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, litigation expenses including attorneys' fees, and other non-pecuniary losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Brown requests this Court enter judgment in her favor against Defendant and further:

(a) Award Mr. Brown compensatory damages, plus past and future pecuniary damages on each of the above-stated Counts in an amount that can only be determined in discovery; and in addition

(b) Award Mr. Brown attorneys' fees, expert fees, and costs of this action as may be permitted by law; and in addition

(c) Award Mr. Brown such other and further relief as may be appropriate.

## JURY DEMAND

### PLAINTIFF COLIN BROWN DEMANDS A TRIAL BY JURY.

Dated:     April 2, 2021           Respectfully,

                                         /s/
                          Joshua Erlich, VA Bar No. 81298
                          Davia Craumer, VA Bar No. 87426
                          Katherine L. Herrmann, VA Bar No. 83203
                          THE ERLICH LAW OFFICE, PLLC
                          2111 Wilson Blvd., Ste. 700
                          Arlington, VA  22201
                          Tel:    (703) 791-9087
                          Fax:   (703) 722-8114
                          Email: jerlich@erlichlawoffice.com
                                        dcraumer@erlichlawoffice.com
                                        kherrmann@erlichlawoffice.com